IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEBORAH L. AKERS, | ) |
| Appellant, | ) |
| v. | ) NO. 3:17-1470 |
| GREGORY FUNDING, LLC, and HENRY E. HILDEBRAND, III, CHAPTER 13 TRUSTEE, | ) |
| Appellees. | ) |

**TO:** Honorable Aleta A. Trauger, Jr., District Judge

### REPORT AND RECOMMENDATION

Pending before the Court are the Motion for Preliminary Injunction and accompanying Complaint and Request for Injunction (Docket Nos. 23 and 24) filed by Appellant Deborah Akers (the "Appellant" or "Akers"). Appellee Gregory Funding LLC, as servicer for AJX Mortgage Trust II, a Delaware Trust, Wilmington Savings Fund Society, FSB, Trustee (the "Appellee" or "Gregory Funding") filed a response in opposition. (Docket No. 25). By Order entered January 24, 2018, this case was referred to the Magistrate Judge for case management, decision on all pretrial, nondispositive motions and report and recommendation on all dispositive motions under 28 U.S.C. § 636(b)(1) and to conduct any necessary proceedings under Rule 72(b), Fed. R. Civ. P. (Docket No. 14).

For the reasons set forth below, the undersigned Magistrate Judge respectfully recommends that Akers' motion (Docket No. 23) be DENIED.

1

I. BACKGROUND

Deborah L. Akers is a resident of 543 Richmar Drive, Nashville, Tennessee, 37211 ("Richmar Property"). Akers seeks to enjoin AJX Mortgage Trust II, Gregory Funding, LLC, and Shapiro and Ingle, LLP from carrying through with a scheduled June 6, 2018 foreclosure of the Richmar Property.

Akers filed a voluntary bankruptcy petition *pro se* under Chapter 13 of Title 11 on July 10, 2017. (Docket No. 22-1 at 15-76)[1]. The petition was filed on the same day foreclosure of the Richmar Property was set to occur by the first lienholder, Gregory Funding, as servicer to AJX Mortgage Trust II. (Docket No. 22-4 at 607-609). The sworn summary, schedules, and statement filed by Akers in her chapter 13 case reflect various values for the Richmar Property. The Summary of Assets and Liabilities lists the value of the Richmar Property as $262,809 (Docket No. 22-1 at 22). On Schedule A, the current value of the property is stated as $350,142, with the value of Aker's fee simple interest as $262,809 (Docket No. 22-1 at 24).[2] In her claimed exemptions, Akers again states the value of her interest as $262,809 (Docket No. 22-1 at 34). However, it appears from the record below that Akers may have quitclaimed all of her interest in the Richmar Property to her non-filing spouse, James Akers for purposes of hindering the secured creditor's prior attempt to foreclose on the property. *See* Transcript of confirmation hearing (Docket No. 22-5 beginning at page 196) at 5-7 and 17-20.[3] *See* Tr. at 45-46, 51-52, and 54-57.

---

[1] Unless otherwise noted, for instance with respect to the confirmation hearing transcript discussed below, the references to page numbers of Docket No. 22-1 et seq. are to the page number in the bottom right corner.

[2] Akers also testified at the confirmation hearing that the fair market value of the property is between $350,000 and $390,000. Transcript of Bankruptcy Court confirmation hearing (which begins at Docket No. 22-5 at 196), p. 11.

[3] Because of the illegibility of numbering of the transcript of the confirmation hearing, which starts at Docket No. 22-5 at page 196, due to this Court's ECF footer overlaid with the

Aker's sworn Schedule D includes MBNA America Bank, Radian Services, Inc., and AJX Mortgage Trustee II, as having claims secured by the Richmar Property, with the current value of that collateral as $262,809 (Docket No. 22-1 at 36-37). These debts are all scheduled as unliquidated and disputed. (*Id.*). Schedule F lists non-priority unsecured debt totaling $5,719.14 (Docket No. 22-1 at 41-44). Schedule I reflects that Akers (and her non-filing spouse) are both currently retired with monthly Social Security and interest income totaling $2,342.98 (Docket No. 22-1 at 45-46). Not including any mortgage debt service payments, monthly net income is $201.58 (Docket No. 22-1 at 47-49). According to the Statement of Financial Affairs, Akers made no mortgage payments during the 90 days prior to filing her most recent chapter 13 case (Docket No. 22-1 at 51).[4]

Akers proposed a monthly chapter 13 plan payment of $201.58 and a plan term of 36 months. (Docket No. 22-1 at 69-76). Akers further proposed a 38.22% dividend to unsecured creditors and moved to avoid the lien of MBNA America Bank. (*Id.*). The proposed plan requested a valuation of the security held by Gregory Funding and Dyck-O'Neal, Inc., but did not provide for any regular payments on the claims. (*Id.*). Akers' proposed chapter 13 plan did, however, include a secured claim purportedly owed to her non-filing spouse, James Akers, in the amount of $43,500 (Docket No. 22-1 at 71), even though no such claim was listed in Schedule D.

Gregory Funding objected to confirmation of the plan alleging that it was not feasible, that it was not proposed in good faith, and that it failed to cure the default and maintain payments on its secured claim. (Docket No. 22-1 at 95). Gregory Funding also filed motions for relief from the

---

Bankruptcy Court's ECF footer, references are to the transcript page number found in the bottom center and top right of each page.

[4] As discussed below, testimony during the confirmation hearing was that no debt service payments have been made since December of 2016.

automatic stay and co-debtor stay to enforce its security interest in the Richmar Property. (Docket No. 22-1 at 162-169).

The Chapter 13 Trustee objected to confirmation as well and requested that the Bankruptcy Court convert the case to a case under Chapter 7. (Docket No. 22-3 at 428). The Chapter 13 Trustee also asserted that Akers' proposed chapter 13 plan was neither feasible nor filed in good faith, and additionally, that it failed to provide present value on secured claims and to comply with § 1325(a)(4). (*Id.*). The Chapter 13 Trustee also filed an objection to Akers' claim of exemptions. (Docket No. 22-2 at 399).

On October 18, 2017, the Bankruptcy Court held a hearing on confirmation of Aker's proposed chapter 13 plan and her objections to the proof of claim and post-petition fee notice filed by Gregory Funding, as well as the Trustee's motion to convert, the Trustee's objection to exemptions, and Gregory Funding's motions for relief from the stay and co-debtor stay. (Docket No. 22-5 at 854-916). The Bankruptcy Court entered its written order on November 3, 2017. The Bankruptcy Court held that Aker's proposed Chapter 13 plan was not feasible and that she did not file the plan in good faith. (Docket No. 1-2 at 1).

In so holding, the Bankruptcy Court found that Akers had not made a mortgage payment on the Richmar Property since December 2016 and that she had no plan to pay her mortgage obligation. (*Id.*). After reviewing the original Note and Allonges with endorsements, the Bankruptcy Court further found that AJX Mortgage Trust II and Gregory Funding, LLC had standing to enforce the lien against the Richmar Property. (*Id.*). Finally, based on the equity in the Richmar Property and the bankruptcy estate's interest in a potential fraudulent transfer action implicated by Akers' transfer of her interest in the Richmar Property by quitclaim deed to her non-

4

filing spouse in May of 2015, the Bankruptcy Court found that conversion to Chapter 7 was appropriate and in the best interest of the creditors. (*Id.* and Docket No. 22-4 at 676-7).

On November 17, 2017, Akers filed a Notice of Appeal and elected to have the appeal heard by this Court. (Docket No. 1). The subject of Akers' original appeal was the Bankruptcy Court's Order Denying Confirmation, Converting case, and Continuing Motion for Relief from Stay and Motion for Relief from Co-Debtor Stay Filed by Gregory Funding. (*Id.*). After Akers' appeal of the November 2017 confirmation order, the Bankruptcy Court entered an order on February 1, 2018 granting Gregory Funding *In Rem* Stay Relief Upon Reconsideration of Amended Motion For Prospective Stay Relief. (Docket No. 22-5 at 960-2). As a result, Akers later amended her appeal to include that order. (Docket No. 20).

In her present Motion for Preliminary Injunction and accompanying Complaint and Request for Injunction, Akers argues that the Court should issue a preliminary injunction under Fed. R. Civ. P. 65 prohibiting the foreclosure of the Richmar Property pending this Court's decision on her appeal.[5] In support of her motion, Akers states that a foreclosure would: result in a financial loss of over $400,000; deprive Akers of her legal interest in the Richmar Property; affect Akers' credit rating; and, leave Akers and her spouse without financial means to obtain suitable housing, food, medical care, transportation, and other necessities.

Gregory Funding opposes Akers' motion. In its response in opposition, Gregory Funding argues that Akers' motion and complaint do not conform to the Federal Rules of Bankruptcy Procedure, that the Bankruptcy Court has already addressed this matter and allowed the foreclosure

---

[5] Appellant's motion was not filed as an emergency motion under Fed. R. Bankr. P. 8013(d).

to proceed, that Akers' does not meet the burden for any injunctive type relief, and that this Court has already denied a similar request for injunction.

## II. ANALYSIS

### A. Procedural Defects

As an initial matter, Akers' filings in this case do not conform to procedural requirements. As discussed in more detail below, the proper way for Akers to have obtained the injunctive relief she seeks is to have filed a motion for stay pending appeal. The Bankruptcy Court granted Gregory Funding *in rem* relief from the bankruptcy stay as of April 30, 2018. *See* Docket No. 22-5 at 960-2. As an order exists allowing for foreclosure of the Richmar Property and Akers has appealed that order, Appellant's Motion for Preliminary Injunction is more appropriately considered as a motion for stay pending appeal.

The Federal Rules of Bankruptcy Procedure govern the filing of a stay pending appeal of a Bankruptcy Court's order. Bankruptcy Rule 8007 requires a party to file its initial motion to stay pending appeal with the bankruptcy court. Fed. R. Bankr. P. 8007(a). As an exception to Bankruptcy Rule 8007(a), a party may file its motion in district court if it shows that moving first in bankruptcy court would be impracticable. Fed. R. Bankr. P. 8007(b)(2)(A). Further, a motion in the district court must include the reasons for granting the relief requested and the facts relied upon. Fed. R. Bankr. P. 8007(b)(3)(A). Finally, a motion in the district court must contain affidavits or other sworn statements supporting facts subject to dispute. Fed. R. Bankr. P.

8007(b)(3)(B).[6] The requirements set forth in Bankruptcy Rule 8007 cannot be suspended by this Court. *See* Fed. R. Bankr. P. 8028.

In the present motion, Akers has neither provided information showing that she first filed for a stay pending appeal with the Bankruptcy Court nor provided any showing that moving first in Bankruptcy Court would be impracticable. Akers provided conclusory statements in ¶7 of her motion regarding the foreclosure's potential harm to her and her spouse, but failed to provide any factual basis for these conclusions.[7] Akers also failed to provide an affidavit or other sworn statement supporting the contentions related to harm set forth in ¶7 of her motion.

While the Court recognizes that Akers is proceeding *pro se* and, as such, is entitled to some indulgences, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), "the lenient treatment generally accorded to *pro se* litigants has limits," *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996), and "*pro se* parties must follow the same rules of procedure that govern other litigants," *Aug. v. Caruso*, 2015 WL 1299888, at *6 (E.D. Mich. Mar. 23, 2015). *See also*, *Looper v. Educ. Credit Mgmt. Corp.*, 2008 WL 2965887, at *8 (E.D. Tenn. July 30, 2008) (plaintiff's "*pro se* status does not exempt him from complying with the rules of procedure."); *Greer v. Home Realty Co. of Memphis Inc.*, 2010 WL 6512339, at *2 (W.D. Tenn. July 12, 2010) ("Although district courts may liberally construe the federal and local rules for *pro se* litigants, even *pro se* litigants are obligated to follow

---

[6] Further, a complaint and request for injunctive relief filed within an already pending action, as Akers has done here, does not suffice under Bankruptcy Rule 8007(b)(3). It may be that, given Akers' *pro se* status, she mistakenly believed this procedure was proper, since she previously filed a similar complaint and request for injunction in a separate case, which was dismissed for lack of subject matter jurisdiction. *See Akers v Edmondson et al*, Case No. 3:18-cv-00212. Nevertheless, as noted, even *pro se* parties cannot be fully excused from the compliance with procedural requirements expected of other litigants.

[7] It is not the Court's function to search the record to support a party's argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."). This Court certainly cannot be expected to craft and support an argument on Akers' behalf.

these rules"). Further, while the court is required to liberally construe *pro se* filings, this does not compel a more lenient application of the substantive law. *Bennett v. Batchik*, 1991 WL 110385, *6 (6th Cir. 1991) (citing *Wolfel v. United States*, 711 F.2d 66, 67 (6th Cir.1983)); *Lyons v. Thompson*, 2006 WL 463111, at *4 (E.D. Tenn. Feb. 24, 2006).

The necessary predicates for obtaining a stay pending appeal are absent from Akers' filings and are fatal to her motion. On that basis alone, Akers' motion for preliminary injunction is properly denied.

B. **Consideration of Request for Injunctive Relief**

Even if the Court treats the motion for a preliminary injunction as one for a stay pending appeal, and allows for the other procedural defects, Akers has not met her burden of proving that a stay pending appeal or similar injunctive type relief is warranted. A stay pending an appeal is similar to a preliminary injunction, so the factors that guide a decision to issue an injunction likewise inform a decision to issue a stay.[8] *See Nken v. Holder*, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009). Those factors are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay, (3) the prospect that others will be harmed if the court grants the stay, and (4) the public interest in granting the stay. *Michigan Coalition of Radioactive Material Users, Inc., v. Griepentrog*, 945 F.2d 150, 153 (6th Cir.1991) (citations omitted). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir.1985)). The first two factors – likelihood of success and irreparable harm – hold the most weight in the balancing test. *See*

---

[8] The following analysis applies to either a preliminary injunction or a stay pending appeal. As stated above, the Court believes that Akers' motion is more properly considered a motion for a stay pending appeal.

8

*Nken*, 556 U.S. at 434, 129 S.Ct. 1749. Parties must show greater than a possibility of both. *Id.* at 434–35, 129 S.Ct. 1749. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000); *see also Griepentrog*, 945 F.2d at 153 ("[E]ven if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the [non-movant] if a stay is granted, he is still required to show, at a minimum, 'serious questions going to the merits.'") The party seeking the stay has the burden of showing that it is entitled to the stay. *See Serv. Emps. Int'l Union Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir.2012).

### a. Likelihood of Success on the Merits

The Court believes that Akers has little chance to succeed on the merits of her appeal. Akers contends on appeal that the Bankruptcy Court: (i) negligently, unwittingly, knowingly, or intentionally erred or abused its discretion in its assessment of the Chapter 13 Trustee's motives; (ii) negligently, unwittingly, knowingly, or intentionally erred or abused its discretion in excluding evidence; (iii) abused its discretion by failing to cite any authorities in its order denying confirmation; and, (iv) abused its discretion in finding that Gregory Funding has standing to enforce its lien against the Richmar Property.[9] *See* Docket No. 2 and 20.

None of the statements cited by Akers in her Opening Brief, Docket No. 13 at 12, if true, show any bias or improper motives on the part of the Chapter 13 Trustee that impermissibly affected the outcome of Akers' bankruptcy proceeding. The statements refer to the status of the

---

[9] Akers has not amended her Statement of Issues to be Presented on Appeal with regard to her amended Notice of Appeal, Docket No. 20, and, as such, has not provided any specific issues she has with the Bankruptcy Court's Order Granting Gregory Funding *In Rem* Stay Relief Upon Reconsideration of Amended Motion For Prospective Stay Relief. Because of the quitclaim by Akers to her husband of all of her interest in the Richmar Property, there is a meritorious argument that the foreclosure was never subject to the automatic stay.

case, the likelihood of equity in the Richmar Property available for the benefit of creditors, and the possible existence of a fraudulent transfer action to be pursued upon conversion of the case. These are all statements by the Chapter 13 Trustee in furtherance of his statutory duties and are devoid of any bias or improper motive. Akers may be correct that the Bankruptcy Court found the statements compelling reasons for conversion of the case from chapter 13 to chapter 7, but the statements made are precisely the kind of considerations that a bankruptcy trustee is statutorily obligated to present and a bankruptcy court is required to consider in determining whether conversion of a chapter 13 case to chapter 7 is in the best interests of creditors. *See* 11 U.S.C. § 1307(c).

Similarly, Akers provides no support for her contention that the Bankruptcy Court excluded evidence at the confirmation hearing. Akers provides no citation to the transcript of the confirmation hearing showing that she offered evidence excluded by the Bankruptcy Court. Indeed, the opposite is true. The Bankruptcy Court provided Akers with the opportunity to make any additional statements and she declined. *See* Docket No. 22-5 at 912. Akers had ample opportunity to raise the admission of evidence at the confirmation hearing, but failed to do so. Even assuming she had attempted to offer the evidence and the Bankruptcy Judge excluded it, Akers made no offer of proof under Fed. R. Evid. 103(a) at the hearing. As a result, she has not preserved the issue for appeal. *See, e.g., Angel v. United States*, 775 F.2d 132, 146 (6th Cir. 1985) ("[T]o preserve error in a ruling on evidence a party must notify the trial court of his position and the specific rule of evidence on which he relies.")

Although the citations were not specifically listed in the Bankruptcy Court's order denying confirmation of Akers' proposed chapter 13 plan, the Bankruptcy Court provided findings of facts and conclusions of law that are supported under 11 U.S.C. §§ 1325(a)(3) through (6) and 11 U.S.C.

§ 1307(c)(5). This assertion of error, therefore, much like the preceding ones, has little, if any, likelihood of success on the merits.

The majority of Akers' arguments in her Opening Brief center on whether Gregory Funding has standing to enforce its lien against the Richmar Property. Akers argues that various assignments of her note were fraudulent. *See* Docket No. 13 at 15. This Court has dealt with similar issues before. In *Jestes v. Saxon Mortg. Servs.*, the Court found that:

> Additionally, Plaintiff is not in a position to challenge the validity of the assignment of the Note. The Sixth Circuit has stated that "there is ample authority to support the proposition that 'a litigant who is not a party to an assignment lacks standing to challenge that assignment.'" *Livonia Prop. Holdings, LLC v. 12840–12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir.2010) (citation omitted). "The exception to this rule is if a plaintiff asserts a 'genuine claim' that he might be subject to 'double liability on the debt." *Brown v. Federal Nat'l Mortg. Ass'n*, 2013 WL 4500569, at *3 (W.D.Tenn. Aug.19, 2013) (quoting *Livonia*, 339 F. App'x at 102). "But if a borrower's rights and duties remain the same but the only change is to whom those duties are owed, the borrower 'cannot now step into the shoes of an assignor to assert its contract rights.'" *Id.* (quoting, *Livonia Prop. Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC*, 717 F.Supp.2d 724, 737 (E.D.Mich.2010)).

No. 2:11-00059, 2014 WL 1847806, at *4–5 (M.D. Tenn. May 8, 2014). Here, like in *Jestes*, Akers has not shown or even argued that she is or will be subject to pay the debt twice. The Bankruptcy Court reviewed the original note and allonges at the confirmation hearing and found Gregory Funding's lien to be valid. Akers' offers no evidence that demonstrates she has a likelihood of success on this issue.[10]

---

[10] Akers makes an argument in Docket Entry No. 13 at 15 related to whether the allonges are enforceable and cites *In re Marsh*, 245 B.R. 536, 537 (Bankr. M.D. Tenn. 2000), a question of state law certified to the Tennessee Supreme Court, *Limor v. Fleet Mortgage Group* (In re Marsh), 12 S.W. 3d 449 (Tenn. 2000) in support of this proposition. Akers also copies and pastes various portions of the Tennessee Code Annotated in the same section of her opening brief without further analysis. However, Tennessee has since amended the statute on which *In re Marsh* was decided and a defect in an acknowledgement no longer invalidates a deed of trust. *See Watson v. Cartee*, 3:14-CV-00580, 2015 WL 728578, at *6 (M.D. Tenn. Feb. 19, 2015), *aff'd,* 817 F.3d 299 (6th Cir. 2016).

Finally, Akers may also be judicially estopped from pursuing her claim of fraudulent note transfers. In an earlier bankruptcy proceeding in 2013, Akers specifically acknowledged her indebtedness to SLS, her prior loan servicer, and to Dyck, a subordinate lien holder. *See* Docket No. 7 at 38. Akers' prior chapter 13 plan was confirmed based on this acknowledgment, and that action by the Bankruptcy Court judicially estops Akers from now contesting the validity of the indebtedness. *See Browning v. Levy,* 283 F.3d 761, 775 (6th Cir.2002) ("judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition.").

Based on the foregoing, the Court finds that Akers has little chance of success on the merits of her appeal, which weighs heavily, if not definitively, against granting a stay or an injunction.

### b. Irreparable Harm to Movant

In evaluating the harm that will occur depending upon whether or not the stay is granted, courts generally look to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. *Griepentrog,* 945 F.2d at 154. In evaluating the degree of injury, it is important to remember that

> [t]he key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974)). In keeping with this admonition, courts have found that the risk of foreclosure during the pendency of an appeal does not constitute irreparable harm because a debtor could be adequately compensated by monetary damages if the debtor lost its interest in property through a wrongful

foreclosure. *See, e.g., Hamilton v. Lomas Mortgage U.S.A. (In re Hamilton)*, 95 B.R. 564, 565 (N.D.Ill.1989).

In the present case, the adequacy of the proof provided is severely lacking. Akers has provided no affidavit or other sworn statement to support her claim that a foreclosure would cause irreparable harm. Further, other than conclusory statements in ¶ 7 of her motion, Akers provides no factual information to prove her claim. Additionally, the substantiality of the injury and the likelihood of the injury's occurrence are minimal because Akers would receive monetary damages in the event of a wrongful foreclosure. The possibility of adequate monetary damages weighs heavily against granting the stay. Further, the testimony of Akers' non-filing spouse at the confirmation hearing undermines her argument that they will have no financial means to obtain housing. At the confirmation hearing, Akers' husband testified that the couple has thousands of dollars in cash stored in a safe as well as income from Social Security. *See* Tr. at 45-46, 51-52, and 54-57.[11] Such funds are a resource to secure temporary alternate housing. A foreclosure, though unfortunate for Akers, will not cause her immediate or irreparable harm. This factor also weighs against a stay or an injunction.

### c. Harm to Others

At the outset, this Court accords this factor less weight than the likelihood of success on the merits and the possibility of irreparable harm to Akers. However, this factor does weigh against a stay or other injunctive relief. Gregory Funding has not received payment on its debt for an extended period of time and has expended significant time and resources in seeking to enforce its

---

[11] Notably, Akers' bankruptcy schedules list cash on hand of only $340.40. *See* Docket No. 22-1 at 28.

legal rights. Any further delay results in harm that supports denial of Akers' requested injunctive relief.

### d. Public Interest in Granting the Stay

As with harm to others, the Court accords this factor less weight than the likelihood of success on the merits and the possibility of irreparable harm. There are public policy arguments in favor of both sides of the dispute. Public policy disfavors the sale of real property through foreclosure auctions, but also favors parties to honor contractual agreements, such as the Mortgage Agreement in this case. *See, e.g., Sayo v. Zions First Nat. 7 Bank*, No. 06–14963, 2006 WL 3392072 (E.D. Mich. Nov. 22, 2006). More compelling though is the often quoted policy that bankruptcy is meant to provide a debtor with a "fresh start" but not a "head start". *In re Masella*, 373 B.R. 514, 518 (Bankr. N.D. Ohio 2008). Debtors who have the ability to pay their debts, should. *Id*. Here, it appears that Akers has the ability to pay creditors from the equity in the Richmar Property. Public policy of not affording a head start to individuals seeking the protections of bankruptcy weights this factor against a stay or other injunctive relief.

## III. RECOMMENDATION

Based on the foregoing, the undersigned Magistrate Judge respectfully RECOMMENDS that Plaintiff's motion for a preliminary injunction (Docket No. 23) be DENIED.

Unless otherwise ordered by the Court, ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding

the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Unless otherwise ordered by the Court, any response to the objections must be filed within fourteen (14) days of service of such objections. See Federal Rule 72(b)(2) and Local Rule 72.03(b)(2).

**The Clerk is directed to send a copy of this Report and Recommendation by first class mail to Deborah Akers and also by email to dlakerstn@gmail.com.**

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge